Filed 5/23/24  P. v. Tallman CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MYLES TALLMAN,<br><br>    Defendant and Appellant. | B332008<br><br>(Los Angeles County<br>Super. Ct. No. MA082799) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2015, appellant Myles Tallman was convicted of felony residential burglary. In 2023, after Tallman was convicted of two counts of evading a peace officer while driving recklessly, and one count of being a felon in possession of a firearm, the trial court sentenced him to seven years and four months. The sentence consisted of three years for one count of evading a peace officer—doubled to six years because Tallman had a prior "strike"[1]—eight months for the second count of evading a peace officer, and eight months for being a felon in possession of a firearm. While Tallman had made a motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to dismiss the prior strike as to all counts, the court granted the motion only as to one of the counts of evading a peace officer and as to the count of being a felon in possession of a firearm.

On appeal, Tallman contends the trial court abused its discretion in refusing to dismiss the prior strike as to the other count of evading a peace officer because the refusal to dismiss the strike "was not based on any articulated grounds;" because the prior strike was eight years old and Tallman's criminal history was "related almost exclusively to controlled substance use"; and because the facts of the current conviction were "not egregious." We conclude the court did not abuse its discretion and therefore affirm.

---

[1] "We use the term 'strike' to describe a prior felony conviction that qualifies a defendant for the increased punishment specified in the Three Strikes law." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 932, fn. 2.)

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.   *Tallman's Prior Criminal History*

In February 2013, Tallman was convicted of misdemeanor possession of a dangerous weapon and sentenced to three years of probation. In April 2013, he was charged with being under the influence of a controlled substance, and in June 2013, he was charged with possession of a controlled substance for sale. He was convicted on both charges in June 2013 and sentenced to a total of 110 days in jail and three years of probation.

In April 2015, Tallman was charged with violating Penal Code section 459 (residential burglary). He was convicted in October 2015, sentenced to five years in prison, and paroled in August 2017.

In February 2019, Tallman was charged with evading a peace officer, violating parole, and misdemeanor driving under the influence. He was convicted and sentenced to 180 days in jail. He was released to Postrelease Community Supervision in July 2020 and discharged in July 2021.

### B.   *Tallman Is Charged*

In March 2022, Tallman was charged by felony complaint with one count of assaulting a peace officer (count 1), two counts of fleeing a pursuing peace officer's motor vehicle while driving recklessly (counts 2 and 3), one count of possession of a firearm by a felon (count 4), and one count of false imprisonment (count

---

[2] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

3

5).[3]  It was further alleged that, in June 2013, Tallman was convicted of the felony of violating Health and Safety Code section 11351 (possession or purchase of controlled substance for sale); in October 2015, he was convicted of the felony of violating Penal Code section 459 (residential burglary); and in March 2019, he was convicted of the felony of violating Vehicle Code section 2800.4 (fleeing a peace officer by driving on the wrong side of a highway).[4]  Tallman pleaded not guilty.  A preliminary hearing was held in April 2022, Tallman was held to answer on all counts, and an information was filed two weeks later in May 2022, alleging the same counts.  In April 2023, an amended information was filed, alleging the same counts, but also alleging circumstances in aggravation as set forth in California Rules of Court, rule 4.421(b)(1), (b)(2), (b)(3), and (b)(5).[5]  Tallman again pleaded not guilty and denied all special allegations.

---

[3] On the second day of trial, the prosecution dismissed count 5.

[4] It was also alleged that the felony conviction for violating Penal Code section 459 was for a "serious and/or violent" felony that made Tallman subject to the "Three Strikes" law.

[5] California Rules of Court, rule 4.421 ["Circumstances in aggravation include factors relating to the crime and factors relating to the defendant. [¶] . . . [¶] (b) [¶] . . . [¶] Factors relating to the defendant include that: [¶] (1)  The defendant has engaged in violent conduct that indicates a serious danger to society; [¶] (2)  The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [¶] (3)  The defendant has served a prior term in prison or county jail under section 1170(h); [¶] . . . [¶] (5)  The defendant's prior performance on probation,
*(Fn. is continued on the next page.)*

## C.    *Trial*

During pretrial motions, the court granted a request to bifurcate both the circumstances in aggravation as well as the strike allegation.  Tallman also agreed to admit to a felony conviction for purposes of count 4 (possession of a firearm by a felon).  Several witnesses testified at trial for the prosecution; none for the defense.

### 1.    Samuel Goldstein

Goldstein testified that, in March 2022, he had been a sheriff's deputy at Lancaster Station for six years.  He had been asked to assist in a "sting" operation for catalytic converter thefts.  As part of that task, he was on duty the morning of March 3, 2022, wearing a uniform, and in a marked police car, when he attempted to pull over a silver pickup truck in a parking lot in the city of Lancaster.  Instead of stopping, the pickup truck drove away from Goldstein, then made an "abrupt U-turn" without slowing, and accelerated directly toward Goldstein's vehicle, even though it did not need to come near Goldstein to exit the parking lot.  The pickup truck swerved away within two or three feet of Goldstein's vehicle, missing it, and then proceeded to exit the parking lot.  As the vehicle passed, Goldstein was able to see the driver—in court, he identified him as Tallman.  The pickup truck fled from Goldstein at a high rate of speed, failing to stop while driving through four stop signs, and driving on the wrong side of the road at times.  The chase proceeded through both commercial and residential areas.  At one point, the pickup truck "jumped the

---

mandatory supervision, postrelease community supervision, or parole was unsatisfactory."

curb," drove through a desert field, returned to a paved street; it was eventually able to escape from Goldstein.

Goldstein was again on patrol in uniform in a marked police car the night of March 7, when he caught sight of the same silver pickup truck that had eluded him on March 3, again being driven by Tallman. Goldstein followed the vehicle, requesting that two vehicles be dispatched to assist him before he attempted to pull it over. After one police vehicle had arrived, the pickup truck "swerved into lanes of traffic and began accelerating very rapidly." Goldstein gave chase and the pickup truck weaved in and out of traffic, including into the bike lane, at speeds of up to 70 miles per hour on city streets; the pickup truck then shut off its lights. Because Goldstein needed to account for the safety of the other cars on the road and did not want to drive into oncoming traffic or down the center median, the pickup truck was able to pull farther away from him. At one point, the pickup truck approached a red light driving at approximately 70 miles per hour and, although it was "kind of a blind intersection," the pickup truck "did not stop or slow down" but "continued straight through without stopping." The pickup truck was again able to escape Goldstein, and he ceased his pursuit.

Later that night, Goldstein received a call regarding a crashed vehicle—the silver pickup truck. Goldstein found a handgun on the floorboard of the driver's side of the vehicle.

### 2. Aaron Tanner

Tanner testified that, in March 2022, he was a sheriff's deputy assigned to a task force targeting catalytic converter theft. On the morning of March 3, he was inside a furniture warehouse. Based on previous thefts at the location, Tanner suspected there could be an attempt to steal the catalytic

6

converter from the store owner's truck parked outside. Around 5:30 a.m.—several hours before the business was open—Tanner saw a black sedan and a silver pickup truck park next to the owner's truck. The occupant of the black sedan exited his vehicle, went to speak with the driver of the silver pickup, opened the back of the store owner's truck, and then returned to converse again with the driver of the silver pickup truck, who was about to park his pickup next to the store owner's truck. Tanner's partner notified patrol units in the area to stop both cars. The black sedan stopped but the silver pickup truck sped off.

Tanner and his partner later drove in an unmarked vehicle around a neighborhood where they suspected the pickup truck might be. After spotting it, Tanner followed the truck to a residence and requested additional units to the scene; Goldstein was one of the units requested. While watching the car, Tanner saw Tallman go in and out of the car several times. After a few hours, Tanner saw Tallman get in the pickup truck and drive away. Over his police radio, Tanner heard that Goldstein was in pursuit of the vehicle but then the pursuit ended. Approximately 20 minutes later, Tanner was called to another location where he saw the pickup truck in a ditch.

### 3. Trevor Kirk

Trevor Kirk testified that, on March 7, 2022, he was a sheriff's deputy and was called to a location and saw an "abandoned truck with an outstanding suspect." Inside the truck was a pink firearm. Kirk later determined it was a functional firearm.

7

**D.** *Conviction and Sentencing*

After the jury had retired to deliberate, Tallman waived his right to a jury trial on his prior conviction as well as the alleged factors in aggravation. The jury deliberated for one and a half days before finding Tallman not guilty on count 1 (assault on a peace officer), but guilty on counts 2 and 3 (fleeing a pursuing peace officer's motor vehicle while driving recklessly). The court accepted the jury's statement that it was hopelessly deadlocked on count 4 and declared a mistrial as to that count.[6] Two months after the prosecution indicated it intended to retry count 4, Tallman pleaded no contest to the count.[7]

In a June 2023 court trial, the court found the prosecution had proven the truth of the prior strike conviction—that Tallman had been convicted of violating Penal Code section 459 in August 2015—as well as all four circumstances in aggravation.

Turning to sentencing, the prosecution requested the court sentence Tallman to seven years and four months, consisting of the high-term of three years for count 2—doubled to six years due to the prior strike—and an additional 16 months (one-third of the

---

[6] After the mistrial was declared, it was revealed that the jury deadlocked 11 to 1 in favor of conviction.

[7] As part of accepting Tallman's plea, the court explained to him that he could be sentenced to eight months for count 4, which could potentially be doubled under the Three Strikes law. The court also explained to Tallman that it was "aware of caselaw that allows your attorney to argue that the court should either strike the strike as to all of the counts, or as to some." The court informed Tallman that it would consider such an argument.

midterm for either count 3 or 4).[8]  The prosecution added that if the court was disinclined to sentence Tallman to the high term for count 2, it would request instead that the court sentence Tallman to the midterm for *both* counts 3 and 4, to be served consecutively.  Acknowledging that the prior strike conviction occurred in 2015, the prosecution argued that since that time, Tallman "has spent basically the last 7 years . . . either incarcerated or committing crimes within the community."

Tallman's counsel asked the court to dismiss the prior strike conviction given its age, and to sentence Tallman to the midterm on count 2, the midterm on count 3, and one-third of the midterm on count 4, for a total of four years and eight months.

The court sentenced Tallman to the high term of three years for the conviction on count 2—doubled to six years because of the prior strike—finding that Tallman was a "serious danger to society" because he had "prior convictions that are numerous and of increasing seriousness" that were of "repetitive conduct that puts society at risk," and because he had "served a prior prison term and did not perform successfully on probation and parole in the past."

As to counts 3 and 4, the court indicated that it had discretion to dismiss the prior strike as to those counts, and that "[e]ven if the court feels that it's appropriate to double the term of the base term, it's not necessarily required to double the consecutive terms that follow."  The court subsequently granted

---

[8] The midterm for both counts 3 and 4 is two years.  One-third of two years is 8 months.  We presume when the prosecution asserted that 16 months was one-third of the midterm for either count 3 or 4, she was including the doubling required under the Three Strikes law.

Tallman's request to dismiss the prior strike for counts 3 and 4 and sentenced him to eight months for each count, to be served consecutively. Tallman's aggregate sentence totaled seven years and four months. Tallman timely appealed.

**DISCUSSION**

### A. *Governing Law*

" '[A] trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . "in furtherance of justice" pursuant to . . . [Penal Code] section 1385(a).' " (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, . . . the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under [Penal Code] section 1385 is subject to review for abuse of discretion." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its

10

discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376–377.)

## B. *Tallman Fails to Demonstrate Error*

The trial court refused to dismiss Tallman's prior strike as to count 2. Tallman contends this was an abuse of discretion because: (1) the court's failure to articulate the grounds for denying the motion meant the denial "was not supported by informed discretion"; (2) the prior strike was eight years old, and Tallman's criminal history was "related almost exclusively to controlled substance use"; and (3) the facts of the current conviction were "not egregious." We conclude the court acted within the bounds of reason.

### 1. The Court Was Aware of Its Discretion

We reject Tallman's contention that the court's failure to articulate why it was refusing to dismiss the strike as to count 2 indicated the refusal was unsupported by informed discretion. Penal Code section 1385 "does not require a court to 'explain its decision not to exercise its power to dismiss or strike' " a prior strike. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 376; *People v. Gillispie* (1997) 60 Cal.App.4th 429, 433 ["The trial court is not required to state reasons for declining to exercise its discretion under section 1385"].) Tallman cannot demonstrate the trial

11

court was unaware of its discretion by complaining the court did not do something it was not required to do.

Moreover, the record indicates the court *was* aware of its discretion to dismiss the prior strike. When it discussed with Tallman the consequences of his no-contest plea to count 4, and the fact that the sentence could be doubled under the Three Strikes law, it also explained that Tallman's attorney would be permitted to argue that the court should dismiss the prior strike, and that the court would entertain that argument. Additionally, it exercised its discretion to dismiss the prior strike as to counts 3 and 4.[9] Thus, it is clear that the court acted with informed discretion. (See *People v. Langevin* (1984) 155 Cal.App.3d 520, 524 ["Where the Legislature establishes a sentencing norm and requires the court explicitly to justify a departure therefrom, and

_____

[9] Tallman argues that the court's decision to strike the strike as to counts 3 and 4, but not as to count 2, "indicate[d] that the court may not have been fully aware of the scope of its sentencing authority on which count or counts it was exercising its discretion." But our high court has expressly stated that "[a] trial judge, applying the factors we enumerated in *Romero* and *Williams*, may find adequate justification for striking one or more prior conviction allegations, but may deem appropriate the sentence that results from striking the prior conviction allegations as to only some counts. When a proper basis exists for a court to strike prior conviction allegations as to at least one current conviction, the law does not require the court to treat other current convictions with perfect symmetry if symmetrical treatment would result in an unjust sentence." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) Thus, that the trial court dismissed the prior strike as to counts 3 and 4, but not count 2, does not indicate that the court was unaware of the scope of its sentencing authority.

the court sentences in conformity with the legislative standard, all that is required on the appellate record is a showing that the court was aware of its discretion to select an alternate disposition"].)[10]

### 2. The Age of Tallman's Previous Conviction Is Not Dispositive

While the age of the prior strike is a factor for the court to consider, it is not dispositive. "In determining whether a prior conviction is remote, the trial court should not simply consult the

_____

[10] Tallman contends in his reply brief that, because the court stated it would grant Tallman's *Romero* motion "as to Count 2 and Count 3 in this case"—when the motion was actually granted as to counts 3 and 4—this meant "the trial court may not have actually fully understood the scope of its discretionary sentencing powers and the consequences of its exercise of those powers."

This argument is forfeited because Tallman failed to raise it in his opening brief. (*People v. Gonzalez* (2020) 57 Cal.App.5th 960, 978 [it is "well established that arguments may not ordinarily be raised on appeal for the first time in a reply brief"].) In any case, Tallman's contention lacks merit. Immediately prior to this statement, the court indicated it was sentencing Tallman to the high-term of three years for "count 2," and that this term would be "doubled, pursuant to Penal Code sections 1170.12 and 667 subdivisions (b) through (j)." Then, after stating it was granting the *Romero* motion as to counts 2 and 3, the court proceeded to sentence Tallman on counts 3 and 4, and stated that "those subordinate terms will not be doubled." On this record, it is clear the court simply misspoke when it stated it was granting the *Romero* motions as to "counts 2 and 3" instead of "counts 3 and 4." Indeed, Tallman made the same mistake in his opening brief.

13

Gregorian calendar with blinders on.  To be sure, a prior conviction may be stricken if it is remote in time.  In criminal law parlance, this is sometimes referred to as 'washing out.' [Citations.]  The phrase is apt because it carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways.  Where, as here, the defendant has led a continuous life of crime after the prior, there has been no 'washing out' and there is simply nothing mitigating about a 20-year-old prior." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

Tallman was convicted of possession of a dangerous weapon in February 2013 and sentenced to three years of probation.

Two months later—i.e., while still on probation—he was charged with being under the influence of a controlled substance. Two months after that—i.e., with a charge pending and while still on probation—he was charged with possession of a controlled substance for sale.  He was sentenced to 110 days in jail and three years of probation.

In April 2015—i.e., while still on probation from the drug charges—Tallman was charged with felony residential burglary. He was convicted, sentenced to five years in prison, and paroled in August 2017.

Eighteen months later, in February 2019—i.e., while still on parole—Tallman was charged with evading a peace officer, violating parole, and misdemeanor driving under the influence. He was convicted and sentenced to jail, released to Postrelease Community Supervision in July 2020, and discharged in July 2021.

Eight months later, the current charges were brought. They again included evading a peace officer and illegally possessing a dangerous weapon.

While the court did not explicitly state its reason for declining to dismiss the strike for count 2, immediately prior to doubling the sentence for count 2, the court reviewed the circumstances in aggravation and found that, in looking at Tallman's criminal record, he was a "serious danger to society"; that he had "prior convictions that are numerous and of increasing seriousness," which seemed to be of "repetitive conduct that puts society at risk"; and that he "did not perform successfully on probation and parole."

Tallman argues that *People v. Garcia, supra*, 20 Cal.4th 490 (*Garcia*) supports his contention that the trial court abused its discretion in refusing to dismiss the strike. *Garcia* is inapposite. There, our Supreme Court was asked to consider whether the trial court abused its discretion in dismissing a prior strike and concluded that it did not. (*Id.* at p. 503.) But, as our high court also established, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra*, 33 Cal.4th at pp. 376–377.) Thus, a holding that the trial court in *Garcia* did not abuse its discretion in dismissing a strike in no way indicates that the trial court *would* have abused its discretion in declining to dismiss the strike.

Nor do we find the facts of the cases comparable. In *Garcia*, there was evidence that the defendant "grew up in foster homes and was addicted to heroin by age 12" and "had a history of burglarizing homes and then trading stolen property for drugs." (*Garcia, supra*, 20 Cal.4th at p. 494.) Moreover, the trial

15

court in *Garcia* "noted that all defendant's prior serious felony convictions arose from a single period of aberrant behavior for which he served a single prison term.  The court commented that defendant had cooperated with police both in 1991 and when they arrested him for the current offenses." (*Ibid.*)  Here, there is no evidence that Tallman was addicted to drugs by a young age, that he committed crimes to support a drug habit, or that he suffered only a "single period of aberrant behavior."[11]  Further, rather than cooperating with the police, he twice led them on a dangerous, high-speed chase.

On this record, the trial court acted well within the bounds of reason in concluding the age of Tallman's felony conviction was insufficient to overcome the more-or-less continuous criminal activity he exhibited.

### 3. The Facts of the Current Convictions Did Not Require the Court to Strike the Strike

Finally, we reject Tallman's contention that his current convictions were not "egregious" because they did not result in an accident or injury.  Tallman led the police on two separate high-speed chases, running through multiple stop signs, driving on the wrong side of the road, driving in traffic without lights at night,

---

[11] While Tallman contends his criminal history "was related almost exclusively to controlled substance use," the only support in the record for this claim is the speculation of the probation officer in his report that "the multiple arrests and convictions for narcotics-related charges indicate that the defendant may have a substance abuse problem."  There is no other evidence of such a problem in the record and, in particular, there is no evidence that Tallman's felony conviction for residential burglary—the strike he wanted dismissed—had anything to do with substance abuse.

16

and plowing through a blind intersection at 70 miles per hour when the light was red.  While no one appeared to have been injured by Tallman's actions, his behavior demonstrated a callous disregard for the safety of others.

We conclude the trial court did not exceed the bounds of reason in declining to dismiss the prior strike as to count 2.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

17